WILMORE
vs.
WILMORE.

a suit to inforce the trust, and rent out the property, and take charge of it, &c.

Wilmore *vs.* Wilmore.

CHANCERY.

ERROR TO JESSAMINE CIRCUIT.

Case 9.

1. The distribution of property between husband and wife after divorce, is to be regulated by the laws in force at the time the facts occur which are the grounds for the divorce. The Revised Statutes have not a retrospective operation on that subject.

2. The rule of equity which requires that upon a rescission of a contract the parties be placed in *statu quo*, does not apply to cases of divorce *a vinculo matrimoni*.

3. Under the provisions of the 7th section of the act of 1809, the Chancellor, on decreeing a divorce, was required to dispose of the property, as to him should seem right, having due regard to the rights of each party, and the children, if any, without divesting either party of title to real estate.

4. In making provision for a wife where the husband had obtained a divorce, the Chancellor will look to the grounds of the divorce, and be governed to some extent by the character of the grounds of the divorce.

James Wilmore filed his bill in the Jessamine Circuit Court against his wife, Susan Wilmore, for a divorce, upon the ground that she had abandoned him and refused to live with him as a wife. Susan Wilmore answered the bill, admitting the abandonment on the ground of maltreatment, and contesting his right to a divorce, and asking for alimony and divorce, and for general relief, and subsequently filed an amended answer and cross-bill, at the hearing of the cause, asking more specifically for support, &c. The Circuit Court granted the divorce to the husband, and being of opinion that the wife was entitled to some of the property of the husband for support, &c., appointed a commissioner to report the value of the estate received by the husband from the wife's father, and the charges upon it, and also the value and

Case stated.

VOL. XV—4

description of his estate, and its probable yearly value. The commissioner reported the value of the husband's estate at $20,390, of the yearly value of $1350. A large part of the estate of the husband was the proceeds of property devised by the father of Mrs. Wilmore to her and her husband, after the marriage.

The court rendered a decree giving to Mrs. Wilmore the exclusive possession of a tract of land of but little value, and not productive, and also two slaves, to be worth $1,000, all which had been devised by her father; and also the use of a small tract of land which Mrs. Wilmore owned at the date of the marriage, worth less than $100 per year—the whole worth about $160 per year. Mrs. Wilmore, being dissatisfied with the decree, has brought it to this court by writ of error.

*Johnson & Robinson*, for plaintiff, assigned for error—

1. That the Circuit Court erred in failing and refusing to decree to Mrs. Wilmore a restoration of all the property which her husband received from her, or by reason of the marriage·

2. In failing and refusing to decree a proper maintenance out of her husband's estate.

3. The court decreed to her too little property after decreeing a divorce.

And argue—1. That the statute on this subject, (1 *Stat. Law*, page 123, *section* 7,) provides that the courts pronouncing the decree of divorce shall regulate and order the division of the estate, real and personal, in such way as to them shall seem just and right, having due regard to each party and the children, if any. And a subsequent statute, (3 *Stat. Law*, page 32, *section* 7)—though having no direct bearing on the subject—is entitled to consideration, when a discretion is to be exercised by the court. It provides, that when the Legislature shall grant a divorce to one or both parties, the wife shall be entitled to all the property her husband receives by her at or

during the coverture, unless she has done some act that forfeits her right of dower.

Thus stood the law until the adoption of the Revised Statutes, which went into effect on the 1st of July, 1852, though adopted by the Legislature at the session of 1850–51. Under the title of "Husband and Wife," page 391, this provision is found: "Upon a final decree of divorce from the bond of matrimony, the parties shall be restored to such property, not disposed of at the commencement of the suit, as either obtained from or through the other, before or during the marriage, in consideration or by reason thereof."

The decree in this case having been rendered in November, 1852, after the Revised Statutes went into effect, it is contended that these statutes govern the distribution of the property after the decree of divorce. But if this statute should not be regarded as of binding force in this case, then under the discretion given by the previous statute to the court, it should be adopted as the rule for the division of the real and personal estate, unless some good reason is shown against it.

The provisions of the Revised Statutes literally apply to this decree of divorce. It became the law of the land before the decree was rendered. It is not making its provisions retrospective to apply them to this decree. The distribution does not precede the decree, but is a consequence of, and follows the decree, and may be a distinct proceeding for enforcing it. There is no provision in the Revised Statutes that they shall not apply to suits then pending; that provision only relates to the repeal of all other statutes, and from that repeal excepts suits then pending; but the provision does not affect the pending suit, or the right involved in the suit. It provides and fixes the rights of the parties upon a collateral matter— the right of property—when that suit is determined. In this case the suit depending was for a divorce, by James Wilmore. His right to that divorce was not affected by the Revised Statutes, nor by the repeal of

the statutes which authorized it; there was no question of property in that suit; the subject of property was brought in for the first time in November, 1852, after the Revised Statutes went into effect, and at the term at which the decree was granted.

By the Revised Statutes, the decree of divorce does not authorize another marriage for a year. Before the Revised Statutes, a decree of divorce authorized an immediate marriage. It would hardly be contended that James Wilmore had the right to marry immediately after the divorce because his suit had been commenced before the Revised Statutes went into operation. Yet, with equal propriety, might he contend for that effect of the decree of divorce, as for the effect of the decree of divorce in regard to the property remaining as it was when he commenced the suit for divorce. Nor is there any injustice or hardship upon him. When he commenced his suit, this law had been adopted, though not to go into operation until a future day. If he did not wish a divorce upon those terms, he had a right to dismiss his suit when the law went into effect. But it is to be presumed that the consideration of property entered largely into his desire for a divorce. He was an old man, and could not have desired to marry again, and the object was to deprive the wife of dower and distribution in his estate. Soon after the separation, he gave a large number of slaves received by his wife to his children. The husband, from the facts of the case, deserves but little sympathy of the Chancellor, if the effect of the law of the Revised Statutes should disappoint his hope of gain.

2. If the court, however, should not sustain these views in regard to the effect of this law, still it is contended that under the discretion given by the law to the court in the division of the estate, real and personal, having due respect to each party, a division should be made in strict accordance with it.

It is contended that the rule in equity, that upon the dissolution of every other contract that the par-

ties shall be placed as far as possible in *statu quo.*
Even in cases of *fraud,* the party *defrauded* has not
the right to annul the contract and hold what he has
got, but must restore it. The only possible reason
for a difference in the dissolution of a marriage con-
tract, is either the birth of children or motives of pol-
icy. Now, upon the subject of policy, the legislative
power is the only proper exponent. The Legislature,
even before this marriage, fixed what it deemed
proper policy in divorces granted by the Legislature:
that the wife should be restored to all her rights of
property, unless she had forfeited them by adultery.

But it is insisted, that by whatever rule, either the
Revised Statutes, or the old rule of equitable terms,
on the rescission of a contract with a due regard to
the policy of the law, as shown by the action of the
Legislature—to which courts should always attend,
and by which they should be guided in matters of
judicial discretion.—it will be manifest on slight con-
sideration of the evidence, that a very large amount
instead of the very small one allowed by the Circuit
Court should be decreed to Mrs. Wilmore.

*Clark & Scott,* for defendant—

According to the pleadings and proof in this record,
the decree of divorce in behalf of the defendant in er-
ror is right, so far as a divorce granted to the defend-
ant and denied to the plaintiff in error.

It appears that these parties were married in Sep-
tember, 1838. The defendant in error was possessed
of an estate estimated at about $10,000, consisting of
lands and slaves, and living with his children in com-
fortable circumstances near the town of Nicholas-
ville—the plaintiff in error, a widow with three chil-
dren, in indigent circumstances residing in the town.
They continued to live happily together, so far as is
shown by the testimony, until her children were mar-
ried off and comfortably settled. Every necessary
comfort of life and assistance seems to have been af-
forded to Mrs. Wilmore. Though she complains of

WILMORE<br>vs.<br>WILMORE.

harsh treatment and unkindness in her answer and cross-bill, it is all denied, and not sustained by proof. There is, in the record, no sufficient ground made out for the abandonment on the part of Mrs. Wilmore— and such being the case, it is denied that she has any right to a decree for divorce, or for a support out of his estate. In the case of *Bogges vs. Bogges*, 4 *Dana*, 308, it is decided that if the wife voluntarily abandons her husband she shall not have a decree for a separate maintenance, unless her abandonment of him was without her fault, and rendered necessary for her safety or happiness, and was consistent with social order and public policy. (*Bouvier's Institutes, vol.* 4, *page* 480.) It is said to be clear law that when the wife separates from her husband voluntarily, and it has not been caused by cruelty or ill-treatment, or when her husband is ready and willing *bona fide* and perfectly able to maintain her, and she refuses to return to him, she loses her right to alimony; "because it is against the policy of the law to encourage these separations." In this case it is shown that the separation was voluntary, and no cause is shown to justify it; and after the separation it is shown that the husband *bona fide* showed willingness and ability to maintain her, and cordially invited her return to his home, which was refused.

It is admitted that the father of the plaintiff in error died in Mississippi, and devised property, lands, and slaves to the plaintiff and defendant, and the defendant was appointed the executor of that will. The estate was involved in law suits, and was incumbered by debts. Fifteen slaves were received after a lapse of some years, and at great expense and trouble equal to the full value—and exceeding it—after paying some specific legacies and bequests. The 300 acres of land in Owsley county is valued at 50 cents per acre. This, with the 15 slaves, was all that the husband received from the wife's father as executor or devisee. When it was received it was worth $5,460. By examination of the record it will

be seen that the expenses and debts, with the ex-
penses incident to the recovery of the property, ex-
ceed the value of the whole estate received at the
time it was received.  Mrs. Wilmore cannot, there-
fore, be regarded as bringing any thing into the pos-
session of her husband.

The defendant in error was clearly entitled to a de-
cree for a divorce.  It is also clear that the plaintiff
in error was not entitled to a divorce; and it is ar-
gued that she is not entitled to alimony.  The prece-
dent would be bad, and contrary to the settled policy
of the law, and would tend to encourage separations,
and tend to unhinge those well settled principles fos-
tered by the community, and calculated to cement
and keep secure the marriage relation.  It is de-
nied that the plaintiff is entitled to any relief; and
that so far as relief has been given by the Circuit
Court, it is erroneous, and ought to be reversed.

*J. Harlan*, on the same side—

1. There is no error in the record to the prejudice
of the plaintiff in error.  The decree granting the di-
vorce cannot be changed by this court.  It is final by
the express provisions of the statute.  But this court
may look into the evidence to ascertain whether the
conduct of the parties has been such as to authorize
any decree in her favor for any thing.  It is denied
that any thing will be found in this record which au-
thorized Mrs. Wilmore to abandon her husband.  The
wrongs set forth in the answer and cross-bill are de-
nied and not proved.

The case presented is, whether a wife, without
any reasonable cause, can abandon the house of her
husband, and seek quarters in the house of other
friends, is entitled at the hands of the Chancellor to
a decree against the husband for a support and main-
tenance?  The authority of the law and the integ-
rity of the institution of marriage is opposed to such
a decree.  It is offering a reward to whimsical and
dissatisfied women to destroy the peace of families,

WILMORE
vs.
WILMORE.

and undermine the institution. The abandonment by Mrs. Wilmore cannot be justified from any evidence appearing in this record; and the decree of the Circuit Court is more favorable to her than she had a right to ask, under the circumstances.

2. This case having occurred previously to the making of the Revised Statutes, the rights of the parties must be determined by the laws in force at the time the rights accrued. The 7th section of the the act of 1809, (1 *Stat. Law,* 123,) provides, that the court pronouncing the decree of divorce shall regulate and order the division of the estate, real and personal, in such way as to them shall seem just and right, having due regard to each party, and the children, if any—provided, that neither of the parties shall be compelled to divest him or herself of the title to real estate.

The report of the commissioner shows the value of the husband's estate. A portion consists of slaves obtained from the estate of Richard Hightower, the father of the wife. He died in Mississippi in the latter part of the year 1838, having made a will dated November, 1838. By this will, after several specific devises, he gave the residue of his estate to his daughter, Susan Wilmore, and son-in-law, James Wilmore, and constituted the latter his executor. The principal part of Hightower's estate consisted of 15 slaves, which at his death were in the possession of a Mrs. Letcher, against whom Hightower had a suit depending in the Chancery Court of Mississippi. The report of the commissioner shows that the devise to Wilmore and wife was of no value whatever. The value of the slaves when Wilmore obtained possession of them was $5,300. The two hundred acres of land in Owsley county, Kentucky, $150, making $5,450. Wilmore paid in legacies, debts, and expenses, $5,-638 75, being $188 75 more than the value of the property received. The land in Owsley county was decreed to Mrs. Wilmore. Wilmore received nothing through his wife except an interest in 24 or 48 acres

of land adjoining Nicholasville, which has been decreed to her by the Circuit Court.

If the value of the property received from Hightower is to be taken into view, its value at the time received should be the period when the estimate is to be made, as reported by the commissioner; then deducting the amount actually paid out by Wilmore for legacies, compromise, doctor's bills, &c., and it exceeds the value of the slaves when received. But it is contended, that if Wilmore did receive any benefit from the estate of Hightower, one-half of it, at least, was received by him as devisee, and the other half in right of his wife.

Taking into consideration the conduct of the parties, and the amount of estate owned by Wilmore, the decree of the Circuit Court is as favorable to Mrs. Wilmore as she had a right to ask.

The act of 1837, (3 *Stat. Law*, 32,) and the provisions of the Revised Statutes, (page 391,) have no application to this case. The first applies to legislative divorces, and the second passed pending this suit. The act of 1809 is the only act applicable to the case. The court is referred to the case of *Pence vs. Pence*, 4 *B. Monroe*, 496, in support of the decree in this case. The difference in the cases is, that Wilmore did no act which authorized the wife to abandon him; in the case referred to, it was different.

Chief Justice MARSHALL delivered the opinion of the Court.

December 14.

A decree, (of which this court has no jurisdiction,) having been rendered in favor of James Wilmore, divorcing him from his wife, Susan Wilmore, on account of her having abandoned him for one year, and the court being of opinion that she was entitled to some provision for her future support, for which, as well as for a divorce and general relief, she had prayed in her original answer, and more particularly in an amended answer and cross-bill filed just as the decree was about to be rendered—a commissioner

was directed to ascertain and report the value of the estate received by Wilmore from his wife's father, with heirs, &c., and the charges upon it, and also the value and description of his estate, and its probable yearly income or value. He reported the total value of Wilmore's estate at $20,390, and its probable annual value at $1350. It further appears that a considerable portion of this estate arose from slaves devised by the father of Mrs. Wilmore to herself and her husband after marriage, and doubtless in consideration of it. And the court decreed to her the exclusive possession of a tract of mountain land, not in cultivation, and of little use or value, which had been so devised; also two slaves to be worth $1,000, out of a number which had been devised in the same way; and also, that she have possession of a small tract of land of which she was possessed at the date of the marriage, reported to be worth $96 a year. The available proceeds of this decree would, at six per cent. per annum, yield about $160 a year.

Mrs. Wilmore, by writ of error, complains of this decree, and seeks its reversal, on the ground that it does not restore to her all the property received by her former husband, through the marriage, and that if she has not a right to this, the provision, as a part merely of his estate, is too small. In support of the first ground it is contended, as the statute respecting legislative divorces requires a restoration to the wife of the property received by the husband with or through her, and as the Revised Statutes adopt the same principle in reference to both parties, and that as this is the principle of equity upon the rescission of contracts, it should be adopted in this case of divorce. The first statute referred to, however, by its terms applies to a different class of divorces, and is not urged as directly applicable to this case. But both of the statutes are referred to as showing that the principle contended for is entirely consistent with the policy of the state, if not required by it; and it is contended that, although the action was commenced be-

fore the Revised Statute on the subject took effect, yet, as the decree was rendered afterwards, the question of property being presented by a new and subsequent proceeding, arising upon or out of that decree, is governed by the Revised Statutes, which prescribes the consequences of a decree of divorce. This argument is illustrated by the question whether Wilmore's right to marry after and in consequence of this decree of divorce, is regulated by the antecedent law which gave the right immediately, or by the Revised Statute, in force at the time, and which prohibited a marriage within a year. It does not follow however therefore because the Legislature have a right to change the law which regulates the future conduct of individuals, and their future action so far as their liability to the public is concerned, they also have the right to change the law determining the existing rights of property; nor will it be presumed that they intend to do so unless such intention manifestly appears from the language of their enactments. And as, by the law existing at the time of filing the petition, the husband had a right, if upon the facts then existing, and therein stated, he should obtain a divorce, to hold his property, subject only to an equitable provision for his wife, this right accrued or accruing, if it might otherwise be affected by the Revised Statutes, which however indicates no intention that it shall operate retrospectively, is expressly saved by the third section of the act adopting the Revised Statutes. Besides, the decree being founded upon facts alleged in the petition and existing at its date, seems properly to relate back to the commencement of the suit, at least so far as the rights of property are involved, and it seems even more certainly just that it should relate back at any rate to the commencement of the demand of property in that suit, and of the litigation about it.

And although it is said that the question of property was raised after the decree of divorce was rendered, this, if true to any extent, is only true with re-

1. The distribution of property between husband and

WILMORE
vs.
WILMORE.

wife after divorce, is to be regulated by the laws in force at the time the facts occur which are the grounds for the divorce. The Revised Statutes have not a retrospective operation on that subject.

2. The rule of equity which requires that upon a rescission of a contract the parties be placed in *statu quo*, does not apply to cases of divorce *a vinculo matrimoni*.

spect to the specific claim set up by Mrs. Wilmore to be restored to the estate derived from her father. Her original answer and cross-bill filed in November, 1851, before the Revised Statutes took effect, claims a provision out of her husband's estate, and for general relief, which would have authorized, and indeed required, the court to make such provision for her according to law and equity. Her subsequent amended answer and cross-bill only suggested the particular provision to which she claimed to be entitled, and alleged the facts relied on in support and explanation of it.

With respect to the argument which p aces a divorce *a vinculo matrimoni* upon the ground of the rescission of an ordinary contract, upon which equity requires that the parties shall be restored to their original condition, as if the contract had never been made, we think the cases are too widely different to establish, on the mere ground of analogy, the application to the case of a divorce, of the principle of restoration to the *status in quo* as the general, and much less as the universal rule. Where, as in this country, the divorce *a vinculo* is most commonly granted for matters occurring after the marriage, the husband, who, by the law as it existed until recently, was invested with the absolute title to all movable property of the wife reduced to possession, and is still so invested except as to slaves, could not with justice be held accountable upon the termination of the coverture by divorce any more than on its termination by the death of the wife, for all of such property that he may have disposed of during its existence. And there is no more reason for holding him thus accountable in case of its termination by divorce than in case of its termination by death. If he held the property in trust for his wife, and as hers, without any interest in himself, there might be some propriety in holding him accountable for the whole of it to her in case of divorce, or to her representatives in case of her death. But as he holds it absolutely for his own use, and subject to his own disposition during

the coverture, with the obligation upon him to support his wife and family according to his estate and condition, there seems to be no basis in equity for such a responsibility for all property acquired by or through the marriage. Our laws have not considered it proper that he should be entirely relieved from this by a divorce, even for the fault of the wife, unless she had forfeited her claim upon him by open adultery. But they do not, as a rule, hold him responsible to the extent which has been noticed. Even the Revised Statutes, (page 391,) section 6, require the restoration of such property only as is not disposed of before the commencement of the suit for the divorce. But, as already decided, that statute does not govern this case, which must be determined by the provisions of the act of 1809, which first gave the jurisdiction to decree divorces, and which, as to this matter, was in force until repealed by the Revised Statutes, which however excepted existing suits and rights.

The 7th section of the act of 1809, (1 *Stat. Law, page* 123,) provides that the court pronouncing the decree of divorce shall regulate and order the division of the estate, real and personal, (referring of course mainly to the estate of the husband,) in such way as to them shall seem right, having due regard to each party, and the children, if any, with a proviso against divesting either party of title to real estate; but it makes no reference to a restoration of property. This enactment means that the division shall be such as, under all the circumstances, shall be equitable. And in the fact, that in administering this law for more than forty years, the courts of this state have not placed it upon the footing of the rescission of a contract for property, nor established as applicable to the division of property directed, the rule placing the parties in *statu quo* with respect to it, we not only find a confirmation of the views already advanced with regard to the application of such a rule to cases of divorce, but also the authority of practice and precedent against such application, except

WILMORE
*vs.*
WILMORE.

3. Under the provisions of the 7th section of the act of 1809, the chancellor, on decreeing a divorce, was required to dispose of the property as to him should seem right, having due regard to the rights of each party, and the children, if any, without divesting either party of title to real estate.

where it may accord with a division which, under all the circumstances, seems right and just. But although we thus reject the estimate of the property received by the husband, and its results in increasing his estate as a measure of the sum which should be decreed to the wife upon a divorce, (for which reason we think it is unnecessary to refer particularly to the calculation intended to demonstrate these results,) we are nevertheless of opinion, that in determining the provision to be made for the wife, we should consider not only the actual estate of the husband, but also the fact, manifest in this case, that he has received by the will of his wife's father, and in consideration of the marriage, a large property in slaves, which, though subject to heavy charges to be paid from time to time by him, have yet, by the value of their hire and services, and by their natural increase, enabled him, by the sale of a few of them, to pay off these charges, and to retain a large number free from incumbrance, the value of which, even excluding fourteen which he distributed among his children and grand-children during the year immediately preceding the commencement of this suit, and when it was perhaps in contemplation, constitutes a very considerable portion of his present estate.

4. In making provision for a wife where the husband had obtained a divorce, the chancellor will look to the grounds of the divorce, and be governed to some extent by the character of the grounds of the divorce.

When in addition to these facts which, in the absence of any flagrant delinquency, should form the principal basis of decision, we take into consideration the great respectability of the parties; their advanced age; the number of children on each side, (though there are none by this marriage;) the associations of the wife, her infirmities, consequent upon her age and laborious industry, and her general good character and conduct, irreproachable, unless on account of her leaving her husband in this instance, which, though upon the proof, it was not deemed justifiable by the Chancellor who decreed the divorce, was doubtless so deemed by herself; we are of opinion, that in the division of the estate, as prescribed by the act of 1809, she is entitled to such portion as will

probably secure to her a genteel support during the remnant of her life, and enable her to give to her own children some portion of what has arisen from the gift of her father, and of which, but for the marriage of their mother, they might perhaps have enjoyed a much greater part.

In this view of the equity of the case, we are of opinion that the provision made for Mrs. Wilmore by the decree is not nearly as much as she should have. And although there may be no precise criterion for determining the amount, we think that $3,000, instead of $1,000 should be fixed, as the value of the slaves which in the division should be allotted to her as her absolute property, to be selected by her, subject to valuation; and if she does not so select, that this allotment should consist, (except so far as she may otherwise select,) of able bodied slaves, capable of present valuable service, and likely so to continue for a reasonable time, and should include a fair proportion of females probably capable of future increase; all to be fairly valued. In other respects, the decree was proper.

If the conduct of the wife had been blameless, a provision equal to what the law would have given her on the death of her husband, would not have been deemed unreasonable in case of a divorce obtained by her, as was decided in *Thornberry vs. Thornberry*, 4 *Littell*, 252. The provision now directed is greatly less. But the statute in all cases requires, or at least authorizes, a division of the estate in such way as to the court may seem right, and the conduct of the parties forms but one element in determining what is right. In the present case the Circuit Court allowed to Mrs. Wilmore $250 in money, for one year's maintenance, pending the suit, which is probably not less or but little lsss than the annual value of the provision which we have prescribed.

Wherefore, the decree is reversed, and the cause remanded for a decree in comformity with this opinion.